IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ANN M. MORRISON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v.  § | Civil Action No. 4:16-cv-00955-O-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES
MAGISTRATE JUDGE AND NOTICE AND ORDER**

Plaintiff Ann M. Morrison ("Morrison") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and for supplemental security income ("SSI") under Title XVI of the SSA. ECF No. 1. This case was referred to the undersigned pursuant to Special Order No. 3-251 on October 17, 2016. After considering the pleadings, briefs, and the administrative record, the undersigned RECOMMENDS that United States District Judge Reed O'Connor AFFIRM the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.    STATEMENT OF THE CASE**

Morrison protectively filed for DIB and SSI on February 6, 2014, alleging that her disability began on October 23, 2012. (Transcript ("Tr.") 22). The Commissioner initially denied her claim on April 30, 2014 and denied it again on reconsideration on July 17, 2014. (Tr. 22).

Morrison requested a hearing, which was held before Administrative Law Judge ("ALJ") Christopher Van Dyck on August 27, 2015 in Fort Worth, Texas, with Morrison and her attorney present. (Tr. 21-22). The ALJ issued his decision on September 24, 2015, finding that Morrison was not disabled. (Tr. 19, 23).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Morrison had not engaged in substantial gainful activity since October 23, 2012, the alleged disability onset date. (Tr. 24). At step two, the ALJ determined that Morrison had the following severe impairments: obesity, degenerative disc disease of the lumbar spine with radiculopathy at S1, right knee osteoarthritis, degenerative joint disease of the neck with headache, obesity, bipolar, anxiety, and depression. (Tr. 24). At step three, the ALJ found that Morrison's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 29). In particular, the ALJ concluded that Morrison retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), with excepted limitations. (Tr. 30). At step four, the ALJ decided that Morrison could not perform past relevant work. (Tr. 33). And at step five, the ALJ found that there were a significant number of jobs in the national economy that Morrison could perform. (Tr. 34).

The Appeals Council denied review on September 30, 2016. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to Morrison's pleadings, testimony at the administrative hearing, and the administrative record, Morrison was 39 years old on the alleged disability onset date, and 41 years

old at the time of the administrative hearing. (Tr. 79, 210). She completed a high-school education. (Tr. 79). Her employment history included work in medical billing/data entry and as a customer service/order clerk. (Tr. 33). Morrison asserts that her physical impairments render her disabled under the SSA. (Tr. 210).

### III.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant

from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV. ANALYSIS

Morrison raises two issues on appeal. She claims that the ALJ failed to (1) consider all of her vocationally significant impairments and (2) establish the existence of work she could perform.

**A.     The ALJ Properly Considered Morrison's Vocationally Significant Impairments.**

Morrison contends that the ALJ "failed to consider" all of her vocationally significant impairments both in that he did not include "a complete recitation of all of the medical conditions which interfere with her ability to perform work-related activities" and did not "consider the vocationally limiting effects of such impairments" in his RFC determination. (Plaintiff's Brief ("Pl.'s Br.") at 9-10). In particular, Morrison alleges that the ALJ should have (1) further considered whether her obsessive-compulsive disorder (OCD) was severe, (2) mentioned her hearing loss and its effect on her ability to work, (3) considered whether her obesity, either alone or in combination with her other impairments, met or equaled the severity requirements of any impairment listed in Appendix 1 or affected her functioning, and (4) further discussed and evaluated her headaches. (Pl.'s Br. at 11-13). The ALJ explicitly considered and rendered findings on each of the aforementioned purported points of error. (Tr. 24-30). The ALJ's findings and ultimate determination are supported by substantial evidence in the record, including evidence that the ALJ both cited to and evaluated as he conducted the disability analysis. (Tr. 27-28).

   *i. Obsessive-Compulsive Disorder*

First, the ALJ specifically considered Morrison's OCD diagnosis and any applicable limitations it may have on his determination of her RFC. The ALJ found that Morrison's OCD was a non-severe impairment "because the medical and other evidence establish only a slight abnormality (or combination of slight abnormalities) that would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience (Social Security Ruling 85-28)." (Tr. 28); *Stone*, 752 F.2d at 1104-06. In so doing, the ALJ considered the available evidence in the record with respect to Morrison's psychiatric treatment. (Tr. 24-30). Morrison does not identify any evidence in the record that supports her argument that the ALJ improperly

5

determined that her OCD was non-severe. Morrison neither identifies medical records that support a determination that her OCD impairment was severe nor argues that any identifiable symptoms caused by her OCD significantly impair or limit her ability to perform basic work activities.

Moreover, substantial evidence in the record supports the ALJ's finding. Morrison underwent a consultative psychological examination with Dr. James Manuel, Psy.D., on April 2, 2014. (Tr. 26, 502). Dr. Manuel noted:

> [Morrison] was oriented to person, place, time, and situation. She appeared to have an estimated average level of intellectual functioning, based on vocabulary, comprehension, and processing speed. She displayed normal mental organization, but had some difficulty with immediate and recent recall.
>
> . . .
>
> [Morrison] reported having a history of helpful mental health treatment; therefore it is likely that she would respond well to therapy. . . . As a result of the findings of this evaluation, the prognosis is good, if best recommendations are followed. [Morrison] is currently psychologically capable of working, without significant interference from her psychological symptoms.

(Tr. 502, 505). Morrison underwent a psychological/neuropsychological testing session with Dr. Cindy Claassen, PhD, on December 29, 2014. (Tr. 693). Dr. Claassen noted that Morrison reported an onset of obsessive-compulsive symptoms including counting, picking at her nails and face, or twirling her hair, beginning in her early 20's. (Tr. 695). Dr. Claassen also stated that Morrison identified the onset of counting triggered by her OCD in 2006 or 2007. (*Id.*). Notably, Morrison continued to work after the onset of OCD symptoms she now alleges should be deemed severe and disabling through August 2009, "when she was terminated for attendance issues which, she reports, occurred because she was 'too tired from lack of sleep' to work regularly." (Tr. 696); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (working for several years while suffering from allegedly disabling impairments supports a finding of no disability) (citing *Fraga v. Bowen*,

6

810 F.2d 1296, 1305 and n.11 (5th Cir. 1987) (ability to work despite pre-existing condition supports a finding that the claimant is not disabled)).

Dr. Claassen identified that the testing results were consistent with the presence of bipolar disorder, (provisional) obsessive compulsive disorder, and personality disorder, NOS with mixed clusters B and C traits. (Tr. 698). In conclusion, Dr. Claassen stated that Morrison "is clearly bipolar" but "her OCD symptoms appear to be moderate at best, and many of these symptoms may actually be a function of racing thoughts and unchecked mania." (Tr. 697). The ALJ considered the testing session and the results in his decision. (Tr. 28). He determined that Morrison's OCD was non-severe, but that her bipolar disorder, anxiety, and depression were severe. (Tr. 24, 28). The ALJ also noted that "[n]o program physician has opined that the claimant meets or medically equals the criteria of a listed impairment." (Tr. 30).

Furthermore, the determination of whether a claimant's impairments meet or medically equal the requirements of impairments in the Listing is reserved solely to the Commissioner. 20 C.F.R. § 404.1527(d)(2). In evaluating whether a claimant's impairments are medically equivalent to a listed impairment, the ALJ considers the evidence in the record as well as the findings of the State agency consultants. 20 C.F.R. § 404.1526(c)-(d). Both State agency consultants opined that Morrison's mental limitations either moderately limited or not significantly limited her ability to perform sustained work activities. (Tr. 117-119, 132-133). These decisions support the ALJ's findings, and the ALJ was entitled to consider them. Findings of fact made by a State agency medical or psychological consultant regarding the nature and severity of an individual's impairments are treated as expert opinion evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 34180, at *2-4 (S.S.A. July 2, 1996). Under Social Security Ruling (SSR) 96-6p, the ALJ may not ignore State agency physician opinions, and must explain the weight given to

these opinions in the ALJ's decision. SSR 96-6p, 1996 WL 374180 at *2. The ALJ appropriately considered and assigned weight to the findings of the State agency consultants, in addition to including supplementary limitations beneficial to Morrison based on medical evidence in the record. (Tr. 32-33). After considering "the limiting effects of all the claimant's impairments, even those that are not severe," the ALJ determined that Morrison had the RFC to perform sedentary work, "except mentally, the claimant can understand, remember and carry out simple instructions and tasks, [and] can tolerate occasional interaction with the public, coworkers, and supervisors." (Tr. 30). This was not error.

Finally, Morrison argues that the ALJ erred in failing to consider and evaluate Morrison's personality disorder, presumably pursuant to Listing 12.08, which applies to personality and impulse-control disorders. (Pl.'s Br. at 11); 20 C.F.R. Pt. 404, Subpt. P, App. 1. Morrison has not identified any legal standard the ALJ failed to employ on this point or offered any evidence in the record that supports any limitations caused by a personality disorder diagnosis. (*See* Pl.'s Br. at 11). Morrison also failed to allege how she specifically meets Listing 12.08, or any pertinent Listing, and has further failed to demonstrate, or even assert in her brief, that she meets the criteria in Listings 12.04 or 12.06—the Listings that Morrison concedes the ALJ considered. (Pl.'s Br. at 10-11); (Tr. 29); *Bordelon v. Astrue*, 281 F. App'x 418, 421 (5th Cir. 2008). Here, as in *Bordelon*, "the record reflects that the ALJ specifically evaluated Listing 12.04 for affective disorders and found [the Claimant] failed to satisfy the requirements necessary to meet or to medically equal its criteria." 281 F. App'x at 421. And in this case, the ALJ also explicitly considered Listing 12.06. (Pl.'s Br. at 11); (Tr. 29). Morrison has not alleged that the ALJ improperly considered Listings 12.04 and 12.06. *See Bordelon*, 281 F. App'x at 421. Listings 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.08 (personality disorders) all contain the same Part B requirements as

each other. *Id.* Therefore, because the ALJ specifically evaluated Listings 12.04 and 12.06 and found that Morrison "failed to satisfy the requirements necessary to meet or to medically equal its criteria[,]" and because all three Listings require the same Part B criteria, the ALJ did not err by failing to specifically consider Listing 12.08. *Id.* (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996)). With respect to the impact of Morrison's OCD on the determination of disability, the ALJ applied the appropriate legal standards, and his decision is supported by substantial evidence.

   ii. *Hearing Loss*

Morrison next claims that she "submitted to a study at the Audiology Department of John Peter Smith Hospital" that "revealed a mild to moderately severe hearing loss in the right ear." (Pl.'s Br. at 11). On this basis, Morrison asserts that "the ALJ never noted the hearing loss and never evaluated whether this condition affects her ability to perform work-related activities." (*Id.*). To the contrary, the ALJ explicitly noted that Morrison's ear problems were not severe as of October 8, 2015, the date of the study. (Tr. 28, 789). The Commissioner notes that "Morrison did not mention hearing issues in her applications for benefits (Tr. 98-99, 110-111, 123, 136, 219, 241); she did not testify about any hearing issues (Tr. 76-97); and in her Function Report, she specifically failed to check boxes [to] indicate issue[s] with hearing or the need for a hearing aid (Tr. 273-274)." (Defendant's Brief at 6). Morrison does not allege any specific reversible error here, other than her assertion at the outset of her argument that "the decision of the commissioner is not supported by substantial evidence." (*See* Pl.'s Br. at 9, 11). Morrison does not identify any limitations on her ability to work caused by hearing loss that the ALJ should have evaluated. (*See* Pl.'s Br. at 11). To the extent Morrison argues that substantial evidence does not support the ALJ's finding that her hearing loss/ear problems were not severe, the court "will not reverse the decision

of an ALJ for lack of substantial evidence where the claimant makes no showing that [s]he was prejudiced in any way by the deficiencies [s]he alleges." *Brock*, 84 F.3d at 729.

   *iii. Obesity*

Next, Morrison contends that the ALJ failed to consider the effects of obesity on her ability to perform work-related activities, thereby rendering the ALJ's RFC determination deficient. (Pl.'s Br. at 12). SSR 02-1p governs the evaluation of disability. SSR 02-1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002). SSR 02-1p requires an ALJ to determine the severity and impact of a claimant's obesity "based on the information in the case record." *Id.* at *6. While Morrison alleges that the ALJ failed to consider the effects of her obesity, she points to no evidence in the record that the ALJ failed to consider which would identify limitations associated with her obesity. (*See* Pl.'s Br. at 12). Contrary to Morrison's assertion that the ALJ merely noted the presence of obesity and failed to further consider its effects or limitations either alone or in combination with her other impairments, the ALJ explicitly determined that Morrison's obesity was a severe impairment and accounted for it in his RFC determination. (Tr. 24, 29, 32).

The ALJ stated, in imposing more restricting limitations than those found by the State agency consultants, that:

> As noted above, the limitation to standing/walking is reasonable in light of evidence regarding the lower extremities and back. However, although the medical evidence does not clearly indicate the claimant cannot lift at the light level, I find that her impairments, combined with her obesity, which reasonably would exacerbate her ability to lift/carry, are sufficient to warrant a finding of a sedentary RFC.

(Tr. 32). The ALJ's decision plainly evidences that the ALJ accounted for Morrison's obesity and its effect on her ability to work in combination with her other impairments. Even though no evidence in the medical record "clearly indicate[s] the claimant cannot lift at the light level[,]" the ALJ determined that Morrison was capable of only sedentary work, not light work as opined by

the State agency consultants, based on the impact of her obesity in combination with her other identified impairments. (*Id.*) Morrison has not identified any evidence supporting any restrictive limitations identified by any treating physician or other medical expert based on her obesity. Morrison does not posit any limitations that the ALJ should have imposed in determining her RFC. The ALJ did not err in his determination of the impact of Morrison's obesity on her ability to work.

 *iv. Headaches*

  With respect to her headaches, Morrison again argues that the ALJ failed to evaluate the impact of her impairment on her ability to perform work-related activities. (Pl.'s Br. at 13). As above, Morrison provides no identified limitations in the record that the ALJ failed to consider which evidence any work-related limitations posed by her headaches. (*See id.*). The ALJ noted that at the hearing, Morrison testified that she has frequent headaches during which her neck and head hurt at the same time. (Tr. 31). In rendering his findings, the ALJ acknowledged Morrison's headaches and, succinctly stated, "[t]he etiology of the claimant's alleged headaches is not strongly supported in the record. . . . Her allegations regarding these issues are not fully credible." (Tr. 32). Morrison neither argues that the ALJ erred in his credibility determination nor failed to consider any limitations identified by Morrison's treating physicians in the record that would affect her ability to work. Morrison has not alleged any legal error on this point; instead, Morrison merely expresses disagreement with the ALJ's finding without identifying any evidence to the contrary that the ALJ ignored in making his determination, or making a showing that substantial evidence does not support this point.

 **B.** **The ALJ Properly Established the Existence of Work Morrison Could Perform.**

  Finally, Morrison alleges that the ALJ "failed to establish the existence of work which Plaintiff can perform." (Pl.'s Br. at 13). Morrison argues that because the ALJ did not consider the

11

impairments she alleges above, the ALJ's hypothetical question was defective. (Tr. 15, 16). For the reasons detailed above, the ALJ properly considered all of Morrison's vocationally significant impairments. Moreover, in posing a hypothetical question to the vocational expert (VE), "[t]he ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Gonzalez v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-02003-O BF, 2012 WL 1058114, at *6 (N.D. Tex. Jan. 26, 2012), *report and recommendation adopted sub nom. Gonzalez v. Astrue*, No. 3:10-CV-2003-O, 2012 WL 1065459 (N.D. Tex. Mar. 29, 2012) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)).

> When an ALJ bases a determination of non-disability on the testimony of a vocational expert in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Detwiler v. Astrue*, No. 5:10-CV-00194-BG, 2012 WL 569188, at *4-5 (N.D. Tex. Jan. 19, 2012), *report and recommendation adopted,* No. 5:10-CV-00194-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). Neither is present here.

The ALJ incorporated all disabilities and impairments he recognized in his hypothetical question to the VE. (Tr. 92-96). Therefore, there is no error in the hypothetical question the ALJ posed to the VE at the hearing. Although Morrison argues that the hypothetical question should have incorporated the moderate concentration limitations the ALJ found while considering "paragraph B" criteria in connection with his evaluation of Morrison's mental impairments—an evaluation inapposite to the determination of RFC—the Court finds that the ALJ reasonably

incorporated such limitations. *Bordelon*, 281 F. App'x at 422. Here, the ALJ limited the claimant's RFC to sedentary and stated "[m]entally, the individual can understand, remember, and carry out simple instructions and tasks, [and] can tolerate occasional interaction with the public, co-workers, and supervisors." (Tr. 94). "Such restrictions to rare public interaction . . . and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the Claimant's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper." *Bordelon*, 281 F. App'x at 423; *see also Taylor v. Colvin*, No. 4:13-CV-534, 2014 WL 4443434, at *6 n.10 (N.D. Tex. Sept. 9, 2014).

Additionally, the ALJ indisputably afforded Morrison's attorney the opportunity at the hearing to correct any alleged or perceived deficiencies in the hypothetical question to the VE. (Tr. 96). The ALJ asked Morrison's attorney, "Counsel, did you have a different hypothetical than the one that I proposed?[,]" to which Morrison's Attorney responded "No, Your Honor." (Tr. 96). Morrison's attorney was "'afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question [ ] (including additional disabilities . . . recognized but omitted from the question)' such that the hypothetical question was proper. . . ." (Tr. 96); *Bordelon*, 281 F. App'x at 423 and n.7 (citing *Bowling*, 36 F.3d at 436). The Court finds no error in the ALJ's consideration and determination of Morrison's ability to perform work at step five. Substantial evidence in the record supports the ALJ's determination.

## V. CONCLUSION

The ALJ properly considered Morrison's vocationally significant impairments and properly established the existence of work that Morrison could perform at step five. Substantial evidence supports the ALJ's decision.

13

## RECOMMENDATION

Because the ALJ applied the proper legal standards and substantial evidence in the record supports the ALJ's factual findings, the undersigned RECOMMENDS that Judge O'Connor AFFIRM the Commissioner's decision.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **March 28, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed March 14, 2017.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE